United States District Court
Southern District of Texas
**ENTERED**
August 13, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| DAVID LEAL § | |
| § | |
| VS. § | CIVIL ACTION NO. 5:24-CV-25 |
| § | |
| CITY OF LAREDO, *et al.* § | |

**ORDER**

In this case, Plaintiff has sued the City of Laredo and six police officers ("Officer Defendants") under 42 U.S.C. § 1983 and the Texas Tort Claims Act for injuries arising out of the Officer Defendants' alleged use of force against Plaintiff (Dkt. No. 7-1 at 38–42). The City and Officer Defendants have moved to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c) (Dkt. No. 7). The Court has carefully reviewed the arguments, record, and applicable authorities, and hereby **GRANTS IN PART** the motion to dismiss (Dkt. No. 7).

## I. BACKGROUND

On July 6, 2019, the Laredo Police Department ("LPD") responded to a disturbance at Palenque Grill involving patrons (Dkt. No. 12-1 at 4). After detaining Plaintiff, LPD officers used excessive force against him while he was handcuffed and tased him (*id.*). Plaintiff claims this caused him to suffer serious injuries including rib fractures, a broken nose, and lacerations to his head (*id.*).

On April 6, 2021, Plaintiff pleaded guilty to the charge of harassment of a public servant under Texas Penal Code § 22.11 (Dkt. No. 4-1 at 182–83). Then, on July 6, 2021, Plaintiff sued the City of Laredo and six unnamed John Doe defendants

for excessive force, false imprisonment, and negligence in state court (*id.* at 3–5). After over two years of discovery, the City of Laredo filed a plea to the jurisdiction on November 8, 2023 (Dkt. No. 12 at 6). In response to the City's plea to the jurisdiction, Plaintiff filed his first amended petition on January 9, 2024, introducing claims under 42 U.S.C. § 1983 for the first time (*id.*).

In state court, Judge Joel Johnson conducted a hearing on January 12, 2024, where he granted the City's plea to the jurisdiction concerning Plaintiff's state law claims against it and orally granted Plaintiff leave to amend (Dkt. No. 12-1 at 97). On January 19, 2024, Plaintiff filed his second amended petition, which named the individual LPD officers involved in the incident for the first time since July 6, 2021, approximately four years and six months after the initial incident (Dkt. No. 12-1 at 20–22). Subsequently, on January 24, 2024, the state court issued a written order formally granting Plaintiff leave to amend his petition to exclusively allege federal constitutional claims (*id.* at 99).

Defendants timely removed the case to federal court on February 8, 2024, and moved to dismiss (Dkt. Nos. 1, 7), arguing that Plaintiff's claims against both the officers and the City were barred by the statute of limitations. Plaintiff responded to the motion to dismiss (Dkt. No. 12), and Defendants replied (Dkt. No. 13), both timely.

## II.   LEGAL STANDARDS

### A. Dismissal Under Rule 12(c)

Defendants brought their motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(c) (*see* Dkt. No. 7 at 4, 8). Defendants filed their motion to

dismiss "after the pleadings [were] closed—that is, after the deadline to respond to Plaintiffs' [Second] Amended Complaint—" so the Court construes the motion as brought under Rule 12(c) (*see* Dkt. Nos. 1-3; 7). *See Tierra Caliente Music Grp., S.A. De C.V. v. Ser-Ca Discos, Inc.*, No. 7:18-CV-252, 2019 WL 13109708, at *1 (S.D. Tex. Aug. 14, 2019) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 12(a)(1)(A)(i) (defendants who have not timely waived service must answer "within 21 days after being served with the summons and complaint"); 12(b)–(c). This finding is merely technical, because Rule 12(b) and Rule 12(c) motions are interpreted under the same standard. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citation omitted).

To survive a motion to dismiss, a complaint must allege sufficient facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the alleged facts allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). In reviewing a motion to dismiss, the court must accept the complaint's well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020).

**B. Negligence Under the TTCA**

A governmental unit in Texas is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
    (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
    (B) the employee would be personally liable to the claimant according to Texas law; and
(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021.

While the TTCA waives governmental immunity for some negligent conduct, it does not waive governmental immunity for claims arising out of intentional torts. *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014). A plaintiff bears the burden of establishing a waiver of governmental immunity under the TTCA. *Harris Cnty. Flood Control Dist. v. Halstead*, 650 S.W.3d 707, 712 (Tex. App.—Houston [14th Dist.] 2022).

### III.   DISCUSSION

**A. Section 1983 Claims Against Officer Defendants**

    1.   *Statute of Limitations & Relation Back Doctrine*

Plaintiff's claims against the Officer Defendants are barred by the statute of limitations. The incident giving rise to this lawsuit occurred on July 6, 2019. Plaintiff sued the City of Laredo and six Doe Defendants exactly two years after the incident, on July 6, 2021. After over two years of discovery, Plaintiff filed his second amended

petition, substituting the six Doe Defendants for the named Officer Defendants, and bringing § 1983 claims against them. Plaintiff argues that, because his original petition was timely filed, the statute of limitations was tolled. He asserts that because his § 1983 claims "remained grounded in the same conduct, transaction, or occurrence detailed in the Original Petition . . . . [they] are thus not barred by limitations [under Federal Rule of Civil Procedure 15(c)]" (Dkt. No. 12 at 7). Plaintiff is mistaken.

Because Plaintiff amended his petition in state court prior to removal, the Court is bound by the statute of limitations and relation back rules prescribed by state law. *See Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 947 (5th Cir. 2014) (noting in removal case that "the Texas statute applies here to determine whether [petitioner's] amended petition filed in state court relates back to the date of his original petition."). "The limitations period for a § 1983 action is determined by the state's personal injury limitations period." *Whitt v. Stephens Cnty.*, 529 F.3d 278, 282 (5th Cir. 2008). "Section 16.003(a) of the Texas Civil Practice and Remedies Code, which establishes the two-year limitations period for personal injury suits, is silent on the issue of tolling and relation back." *Balle v. Nueces Cnty.*, 952 F.3d 552, 557 (5th Cir. 2017). The Fifth Circuit has held that filing a John Doe petition in a personal injury lawsuit does not toll the statute of limitations under § 16.003. *See id.* (comparing § 16.003 to § 16.0045(d), which expressly allows John Doe petition to toll the statute of limitations for certain sex crimes). Therefore, "'Unknown Defendants' or 'John Does' in a complaint cannot serve as placeholders for Plaintiff to later substitute in real Defendants identified through discovery after the statute of

4

limitations has passed." *Wilson v. City of Mission*, No. 7:18-CV-00399, 2020 WL 2079359, at *6 (S.D. Tex. Apr. 29, 2020) (citations omitted).

But the rule against John Doe petitions is not without exception—the statute of limitations may still be equitably tolled where "the delay in determining the identity of 'John Doe' [was] not attributable to the plaintiff's actions." *Balle*, 952 F.3d at 558 (quoting *Green v. Doe*, 260 F. App'x 717, 719 (5th Cir. 2007) (per curiam)); *see also Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) ("The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.") (citation omitted)). In *Green*, equitable tolling was appropriate because the plaintiff had initiated the lawsuit nearly eleven months before the statute of limitations had run but was denied an opportunity to conduct discovery. 260 F. App'x at 719. If the district court had not denied both of the plaintiff's discovery motions, "he would have had sufficient time to identify the officer and amend his complaint . . . ." *Id.* at 720. Thus, the plaintiff was not responsible for the delay in identifying the John Does he sued. *See id.* In contrast, equitable tolling was not appropriate in *Balle*, where the plaintiff had filed his complaint a few days before the statute of limitations had run. 952 F.3d at 558. "Balle's inability to determine the identities of the Jane Does before the limitations period had run was attributable to his own decision to file his suit so close to the end of the limitations period." *Id.*

The case at bar mirrors *Balle* not *Green*. Plaintiff filed suit the day the statute of limitations was set to run, leaving no room for discovery to identify the Doe

5

Defendants (Dkt. No. 12-1). Therefore, Plaintiff's delay in identifying the Doe Defendants flows from his own choices, and equitable tolling is not appropriate. Because Plaintiff's § 1983 claims against the Officer Defendants are time-barred, the motion to dismiss (Dkt. No. 7) is **GRANTED IN PART** as to these claims.

### B. Section 1983 Claims Against the City of Laredo

The City of Laredo has moved to dismiss Plaintiff's claims on the basis that they are barred by (1) the *Heck v. Humphrey* doctrine; (2) the statute of limitations; and (3) the doctrine of *res judicata*. The Court treats these arguments in turn.

#### 1. Heck v. Humphrey *Doctrine*

Defendants argue that Plaintiff's claims against the City are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) (Dkt. No. 7 at 10–11). "Supervisory liability claims under *Monell* require an underlying constitutional violation and, where the underlying violation is barred by *Heck*, it cannot form the basis for a derivative *Monell* claim. *Williams v. Town of Delhi*, No. CIV.A. 14-00043, 2015 WL 868746, at *7 (W.D. La. Feb. 27, 2015) (collecting cases). Therefore, although Plaintiff's claims against the Officer Defendants are time-barred, the Court must consider whether they are similarly *Heck*-barred for purposes of analyzing the pending *Monell* claims against the City of Laredo.

In *Heck*, the Supreme Court held that a plaintiff previously convicted of a crime in state court could not bring claims under § 1983 if the claims would amount to a collateral attack on the prior conviction. 512 U.S. at 487. Under this doctrine, when a plaintiff sues the arresting officers and their supervisors, "the district court

6

must first 'consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.'" *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008) (quoting *Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000)). Further, "a claim is barred by *Heck* if the plaintiff's factual allegations supporting the claim are necessarily inconsistent with the validity of the conviction." *Aucoin v. Cupil*, 958 F.3d 379, 383 (5th Cir. 2020) (citations omitted).

"Although the *Heck* principle applies to § 1983 excessive force claims, the determination of whether such claims are barred is analytical and fact-intensive, requiring [courts] to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (citation omitted). In conducting this analysis, courts are to assess "'whether a claim is temporally and conceptually distinct from the related conviction and sentence,' asking whether the claim is 'necessarily inconsistent' with the conviction, or whether the claim can 'coexist' with the conviction without calling the conviction into question." *Robinson v. Lipps*, No. 6:18-CV-01062, 2019 WL 136983, at *4 (W.D. La. Jan. 4, 2019) (citing *Smith v. Hood*, 900 F.3d 180, 185 (5th Cir. 2018)).

Here, Defendants argue that Plaintiff's § 1983 excessive force claim against the Officer Defendants is necessarily inconsistent with his deferred adjudication for harassment of a public servant (Dkt. No. 7 at 10–11) (citing *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656 (5th Cir. 2007)). In *DeLeon*, the plaintiff's excessive force

7

claim was *Heck*-barred because he had a deferred adjudication for aggravated assault and his complaint "maintain[ed] that he did nothing wrong, that he simply defended himself." *Id.* at 656–57. In particular, the plaintiff averred that he "had committed no crime" and was "unlawfully assaulted, and physically beaten and shot." *Id.* at 657. Thus, the *Heck* bar applied because his excessive force claim was not separable from and could not coexist with his aggravated assault of the officer. *Id.*

Although Defendants liken this case to *DeLeon*, this comparison is unpersuasive given that Plaintiff's deferred adjudication is for harassment of a public servant, not aggravated assault. This difference is critical. As the Fifth Circuit has explained, an aggravated assault conviction bars excessive force claims originating from the same conduct because "Texas law permits an officer to use any force—even deadly force—to protect against an aggravated assault." *See Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004). Therefore, "[b]ecause any force [is] justified in response to an assault, a finding that the officers used excessive force would necessarily mean that the plaintiff had not committed aggravated assault." *Id.* (citation omitted). Defendants do not cite to, and the Court is unaware of, any authority suggesting that officers can employ any degree of force in response to harassment. Additionally, unlike in *DeLeon*, Plaintiff does not affirmatively allege that he did nothing wrong. Rather, he argues that the Officer Defendants used an unconstitutional amount of force in response to "non-threatening actions like verbal provocation or spitting," implicitly acknowledging the conduct that he later pleaded

8

guilty to (Dkt. No. 7-1 at 39). Because Plaintiff did not assert he is "wholly blameless for the use of force against him," this case does not squarely fit with *DeLeon*.

Moreover, Plaintiff's excessive force claim may be, at least in part, temporally distinct from the conduct that gave rise to his deferred adjudication for harassment. Parsing through Plaintiff's second amended petition, he appears to be challenging several actions, including (1) "the officers' failure to announce Leal's arrest before beating him," (2) "tight handcuffing," by Officer Andres Rodriguez and (3) "the use and/or misuse of a taser" by Officer Laura Montemayor (Dkt. No. 7-1 at 39). If the conduct underlying Plaintiff's conviction occurred "during and contemporaneously with the arrest . . . and that conduct warranted the level of force used in effectuating [Plaintiff's] arrest, *Heck* may very well bar this claim." *See Robinson*, 2019 WL 136983, at *6 (citing *Curran v. Aleshire*, 800 F.3d 656, 660 (5th Cir. 2015)). But neither side has clearly addressed the timeline of events; so, the Court cannot rule out the possibility that the Officer Defendant used excessive force once Plaintiff's harassing conduct had ceased. *See id.* (denying motion to dismiss excessive force claim under *Heck* where the timeline for the alleged use of force was unclear).

At this juncture, the Court must view the allegations of a complaint in the light most favorable to the plaintiff. *See Sewell*, 974 F.3d at 582. Given this standard, the Court is not persuaded that Plaintiff's excessive force claim cannot coexist with his deferred adjudication for harassment of a public servant. *See Arnold*, 100 F. App'x 321, 323 (noting excessive force claim does not "invariably invalidate" conviction).

9

2.  *Statute of Limitations*

The City argues that Plaintiff's § 1983 claim against it is barred by the statute of limitations because Plaintiff's original petition did not include a *Monell* claim, and the statute of limitations expired more than two years before Plaintiff alleged a federal claim (Dkt. No. 7 at 11–12).

As discussed above, Plaintiff filed his original petition on July 6, 2021 (Dkt. No. 1-3 at 2), based on an incident that occurred on July 6, 2019 (Dkt. No. 7-1 at 20). Although the City was a defendant to the original petition, the petition expressly excluded all federal claims (*id.* at 19–20). Plaintiff first brought federal claims against the City in an amended petition on January 9, 2024 (Dkt. No. 1-3 at 5). This was two years, six months, and three days after the two-year statute of limitations expired.

To overcome the statute of limitations, Plaintiff relies on the relation back doctrine, under which "a plaintiff may amend his complaint 'to add a new party, claim or defense that arises out of the conduct, occurrence or transaction alleged in [the] original pleading and that would otherwise be time-barred.'" *Salazar v. Texas*, No. 5:16-CV-292, 2020 WL 13609390, at *6 (S.D. Tex. Apr. 23, 2020) (quoting *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F. Supp. 2d 935, 945–46 (S.D. Tex. 2013)). "If an amended pleading relates back, it is 'treated, for purposes of the statute of limitations, as having been filed on the date of the original complaint.'" *Id.* (citations omitted); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 16.068. Arguing that his amended petitions "served to clarify and expand upon the original factual allegations and remained grounded in the same conduct, transaction, or occurrence detailed in

10

the Original Petition," Plaintiff asserts that his claims against the City relate back to his original petition (Dkt. No. 12 at 7).

In opposition, the City cites *Lang v. City of Nacogdoches*, a Texas court of appeals case which held that a later-alleged § 1983 claim was time-barred where the statute of limitations had expired and plaintiffs had not alleged facts in their original petition "showing that an unconstitutional *policy* or *custom* was being implemented or executed by the City . . . ." 942 S.W.2d 752, 761–62 (Tex. App.—Tyler 1997, writ denied) (emphasis in original). Thus, the *Lang* court found that "the policy and custom elements of the Section 1983 cause of action alleged by [plaintiffs] against the City . . . in their First Amended Original Petition constituted a wholly new, distinct or different transaction or occurrence." *Id.* at 762.

Unlike in *Lang*, Plaintiff here has apparently alleged a ratification claim, asserting that the Assistant Chief of Internal Investigations for the Laredo Police Department's refusal to launch an internal investigation regarding the circumstances of Plaintiff's arrest "effectively ratified the conduct of the officers involved" (Dkt. No. 7-1 at 40). Ratification is a variant of *Monell* liability which does not require proving the existence of an unconstitutional written policy or a pattern of prior unconstitutional incidents. Rather, "[u]nder ratification theory, *a single incident* that is an 'obvious violation of clearly established law' attaches liability when ratified by policymakers." *Harper v. McAndrews*, 499 F. Supp. 3d 312, 321 (E.D. Tex. 2020) (emphasis added) (quoting *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009)); *see also Grandstaff v. City of Borger*, 767 F.2d 161,

11

171 (5th Cir. 1985) ("[The City's] reaction to so gross an abuse of the use of deadly weapons says more about the existing disposition of the City's policymaker than would a dozen incidents where individual officers employed excessive force."). Therefore, *Lang*'s reasoning that the *Monell* claim in that case failed because the plaintiffs had not alleged facts regarding a policy or custom is not clearly applicable to Plaintiff's single-incident claim.[1]

Further, to the extent it may apply, the Court is not persuaded[2] to follow *Lang*'s reasoning, as several other federal courts have since concluded that later-added municipal liability claims relate back, after the passing of the statute of limitations, to an original petition which did not state such claims. For instance, in *Banda v. City of McAllen*, the plaintiff's original petition against the City of McAllen, filed in state court, alleged only state law causes of action. No. CV M-23-341, 2023 WL 8851998, at *1 (S.D. Tex. Dec. 5, 2023), *report and recommendation adopted*, No. 7:23-CV-00341, 2023 WL 8833656 (S.D. Tex. Dec. 21, 2023). In her second amended petition, also filed in state court, but after the statute of limitations ran, the plaintiff brought a § 1983

---

[1] To be clear, ratification claims prevail only in "extreme factual situations." *Snyder v. Trepagnier*, 142 F.3d 791, 797 (5th Cir. 1998) (quoting *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986)). For instance, in *Grandstaff*, the entire night shift of the city's police force pursued a fleeing suspect onto the ranch of an innocent third party and, "without awaiting any hostile act or sound," "poured" gunfire onto a truck in a "wild barrage" and killed its innocent occupant. 767 F.2d at 165, 168, 170–72. The Fifth Circuit found ratification given that the City denied any failure and "concerned [itself] only with unworthy, if not despicable, means to avoid legal liability." *Id.* at 166. Further, "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (citing *Coon*, 780 F.2d at 1161–62). However, the City of Laredo has not challenged the substance of Plaintiff's ratification claim at this stage, and the Court expresses no opinion as to its merits—the Court's decision here is based on the procedural arguments raised by the parties.

[2] "In order to determine questions of state law, federal courts look to final decisions of the state's highest court . . . . While decisions of intermediate state appellate courts provide guidance, they are not controlling." *United Tchr. Assocs. Ins. v. Union Lab. Life Ins.*, 414 F.3d 558, 565 (5th Cir. 2005) (citations omitted).

12

municipal liability claim against the city. *See id.* at *1, *3. Applying Texas Civil Practice and Remedies Code § 16.068, the *Banda* court found that the municipal liability claim related back to the original complaint because it was based on the same transaction or occurrence as the original petition. *Id.* at *3.

Like in *Banda*, Plaintiff's later-alleged ratification claim brought under § 1983 is based on the same transaction or occurrence as his original petition. The City's decision to not conduct an internal investigation of the July 6, 2019, incident, the basis of Plaintiff's original claims, is not "wholly" based on a "new, distinct, or different transaction or occurrence." *See* Tex. Civ. Prac. & Rem. Code § 16.068; *see also Greco v. Nat'l Football League*, 116 F. Supp. 3d 744, 748 (N.D. Tex. 2015) ("[I]t is a cardinal rule in Texas that a court construes a statute, 'first by looking to the plain and common meaning of the statute's words.'") (citations omitted). Therefore, Plaintiff's later-alleged *Monell* claim relates back to his original petition, and the City's statute of limitations argument fails. *See also Mont Belvieu Square, Ltd. v. City of Mont Belvieu*, 27 F. Supp. 2d 935, 939 (S.D. Tex. 1998) (under § 16.068, federal civil rights claims related back to state claims filed five years earlier because allegations of racial discrimination were intertwined with original transaction or occurrence); *Price v. Jefferson Cnty.*, 470 F. Supp. 2d 665, 682 (E.D. Tex. 2006) (section 1983 claims in amended petition related back to original petition because new claims were based on same transaction or occurrence); *Salazar*, 2020 WL 13609390, at *7 (plaintiff's later-alleged municipal liability claim related back to original complaint because it arose out of the same tasing incident as plaintiff's original claims).

13

### 3. *Res Judicata*

Finally, the City seeks to dismiss Plaintiff's state law claims against it under the doctrine of res judicata, arguing that these claims were already dismissed in state court (Dkt. No. 7 at 12). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

"Because the claimed preclusive effect arises from a state-court judgment, we apply Texas law to determine whether res judicata is applicable." *Cox v. Nueces Cnty.*, 839 F.3d 418, 420–21 (5th Cir. 2016) (citation omitted). "Under Texas law, res judicata requires proof of three elements: '(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.'" *Id.* at 421 (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)).

Here, the fatal defect in the City's claim is not hard to spot: there is no prior final judgment on the merits. The state court order dismissing Plaintiff's state law claims was issued in this same case prior to removal, not in a separate lawsuit. Thus, there is no previous action which could have a preclusive effect. *See Fuller v. D. L. Peterson Tr. Co.*, No. CV 17-0408, 2018 WL 7050843, at *3 (W.D. La. Dec. 3, 2018), *report and recommendation adopted*, No. CV 17-0408, 2018 WL 7075157 (W.D. La. Dec. 27, 2018) ("Here, there is no second action. This is the same suit that was

removed from state court."). Further, the state court order granting the City's plea to the jurisdiction expressly stated that it was granted as to Plaintiff's original petitions, after a hearing in which the court also granted Plaintiff leave to amend his complaint (*see* Dkt. Nos. 1-3 at 5; 6-7 at 2). That was not a final judgment on the merits, as required for res judicata to apply.

However, while the City's res judicata argument is unavailing, the simple fact is that, after a hearing, the state court judge dismissed all of Plaintiff's pending claims and permitted him to file a "Second Amended Petition alleging Federal Constitutional claims *only*" (Dkt. No. 7-1 at 14, 16) (emphasis added). Judge Johnson even signed his name next to the "only," making it clear that Plaintiff was not to reallege state law claims (*id.* at 16). Among the state claims that Judge Johnson dismissed was a negligence claim under the Texas Tort Claims Act, which Plaintiff appears to have realleged in his second amended petition (*see* Dkt. Nos. 1-3 at 5; 4-1 at 7–10; 7-1 at 43). Therefore, Plaintiff's reallegation of the dismissed state law claims contravenes Judge Johnson's order.

"The Fifth Circuit has long held that '[w]hen a case is removed the federal court takes it as though everything done in the state court had in fact been done in the federal court.'" *Suarez v. GEO Grp.*, No. 5:15-CV-83, 2015 WL 13121263, at *1 (S.D. Tex. May 18, 2015) (Garcia Marmolejo, J.) (quoting *Savell v. S. Ry.*, 93 F.2d 377, 379 (5th Cir. 1937)). That means this Court must enforce the state court order that Plaintiff only allege federal constitutional claims in his Second Amended Petition. *See Kana Energy Servs., Inc. v. Jiangsu Jinshi Mach. Grp.*, No. CV H-19-0213, 2019

WL 2208139, at *5 (S.D. Tex. May 22, 2019) (enforcing state court order dismissing motion to compel arbitration and remanding case for consequent lack of federal-question jurisdiction). Thus, the City's motion to dismiss will be **GRANTED** as to the state law claims, because the state court order granting Plaintiff leave to amend does not permit Plaintiff to reraise these claims (*see* Dkt. No. 7-1 at 16).

## IV. CONCLUSION

Defendants' motion to dismiss (Dkt. No. 7) is hereby **GRANTED IN PART**. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants James Cantu, Jacqueline Davalos, Pedro Malacara, Jose Espinoza, Robert Medina, Andres Rodriguez, Laura Montemayor, Javier Diaz, and Manuel Macias from this action. Plaintiff's federal claims against the City remain pending.

It is so **ORDERED**.

**SIGNED** August 13, 2024.

_____
Marina Garcia Marmolejo
United States District Judge